**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**PERRY LEWIS TURNER, SR.**                                                **PLAINTIFF**

**VERSUS**                                              **CIVIL ACTION NO. 2:04CV213-P-A**

**TUNICA COUNTY, MISSISSIPPI and
JAMES DUNN, in his individual capacity**                               **DEFENDANTS**

## MEMORANDUM OPINION

This cause is before the Court on defendant Tunica County's Motion for Summary Judgment [68-1]. The Court, having reviewed the motion, the response, the briefs of the parties, the authorities cited and being otherwise fully advised in the premises, finds as follows, to-wit:

### FACTUAL BACKGROUND

Perry Turner began working as Tunica County's solid waste manager in March, 2000. A year later Turner transferred to a position as Tunica County's Director of Housing. His responsibilities included advertising the availability of applications to the citizenry, receiving applications and determining those eligible to participate in the County's homeowner's rehabilitation program.[1]

During Turner's tenure as director of the housing program, members of the Board of Supervisors pressured him to make repairs to the homes in their respective beats a priority over those in other areas. Just prior to elections, individual supervisors contacted Turner on multiple occasions to follow up on repairs to houses within their electoral district. Supervisor Billy Pegram stayed on

---

[1] Under the rehabilitation program, the County appropriated $500,000 for home repairs for qualified homeowners. The housing department had only two employees: Turner and Masheilia Holland, the Assistant Director of Housing.

Turner because "he made it clear . . . that those people were important during the time of the election and he wanted them taken care of." In addition, Supervisor Cedric Burnett asked Turner to take care of Henrietta Hayes, who was the "number one vote-getter for his campaign."

Turner protested vocally to the county administrators and each of the supervisors regarding what he perceived as unlawful interference in the housing authority's function by utilizing County funds to provide services based on a desire to gain political influence over constituents rather than need. When Turner voiced his concerns to Clifton Johnson, the assistant county administrator, he rebuffed Turner with a comment to the effect that "the Board makes the rules, and they can change them whenever they get ready."

In February 2003, Turner decided to challenge incumbent supervisor James Dunn for his seat on the Board of Supervisors in the primary election. Dunn responded by seeking the elimination of Turner's job in or around March 2003. However, the other county supervisors resisted and Dunn's efforts proved unsuccessful.

Turner was one of four candidates for District One Supervisor in the August 5, 2003 democratic primary election. Of the 534 votes cast, Turner received 113 votes. Dunn received 271 votes; Dunn was declared the winner without a run-off. Shortly after the election, Turner wrote to the District Attorney to complain about what he perceived to be unlawful activities in conjunction with the election.[2]

---

[2] The letter enumerated various retaliative efforts Dunn directed toward Turner after Turner announced his candidacy for the District One Supervisor position. Turner's letter also suggested that Dunn used his political authority to influence voters in his favor by having certain of the roads in the district paved just prior to the election. In addition, Turner's letter outlined numerous alleged irregularities pertaining to the election and the subsequent tally of votes.

Pursuant to a 1998 contract between the County and North Delta Regional Housing Authority (hereafter NDRHA), NDRHA implemented, administered and managed the Tunica County homeowner's rehabilitation program from its inception. On June 7, 2004, the Board of Supervisors unanimously approved a supplemental agreement charging NDRHA with the operation of Tunica County's housing program . The agreement provided for NDRHA to assume the duties and responsibilities formerly performed by Turner, thereby resulting in the elimination of Turner's position with the County.

Turner responded by filing the instant lawsuit against Dunn and Tunica County. He seeks redress based on 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. In addition to his federal claims, Turner's Complaint also seeks recovery under state law for malicious interference with employment relations. After sufficient opportunity for discovery, Tunica County filed a motion for summary judgment.[3] The motion has been fully briefed and the Court is ready to rule.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corporation v. Catrett, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S. Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. John v. State

---

[3] Defendant Dunn filed a dispositive motion at the inception of the case; that motion has already been decided.

of La. (Bd. Of T. for State C. & U., 757 F.2d 698, 712 (5th Cir. 1985).

A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L.Ed.2d 202, 106 S. Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." Id. "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. Phillips Oil Company, v. OKC Corporation, 812 F.2d 265, 272 95th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. See Celotex, 477 U.S. at 323, 106 S. Ct. at 2552. Topalian v. Ehrman, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. McPherson v. Rankin, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. Union Planters Nat.

4

Leasing v. Woods, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. Topalian, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." John, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment, " even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. Id. at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. Ferguson v. National Broadcasting Co., Inc., 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." In Re Municipal Bond Reporting Antitrust Lit., 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed. R. Civ. P. See also Union Planters Nat. Leasing v. Woods, 687 F.2d at 119.

While generally "[t]he burden to discover a genuine issue of fact is not on [the] court, (Topalian, 954 F.2d at 1137), "Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention–the court must consider both before granting a summary judgment." John, 757 F.2d at 712, quoting Keiser v. Coliseum Properties, Inc., 614 F.2d

406, 410 (5th Cir. 1980).

## LEGAL ANALYSIS

Turner's sole claim against the County arises under the First Amendment. He urges that Tunica County violated his First Amendment right to free speech by eliminating his job because he protested against the supervisor's interference with the Housing Authority's function. The County seeks summary judgment on the claim against it.

In order to establish a constitutional claim for retaliation based on the exercise of rights under the First Amendment, a plaintiff must prove four elements. First, the plaintiff must suffer an adverse employment decision. Second, the plaintiff's speech must involve a matter of public concern. Third, the plaintiff's interest in commenting on matters of public concern must outweigh the defendant's interest in promoting efficiency. Fourth, the plaintiff's speech must have motivated the defendant's action. Mount Healthy City Sch. Dist. Bd. of Education v. Doyle, 429 U.S. 274, 283, 87, 97 S. Ct. 568, 574-76, 50 L.Ed.2d 471 (1977). See also Breaux v. City of Garland, 205 F.3d 150, 156 (5th Cir. 2000); Kennedy v. Tangipahoa Parish Library Bd. of Control, 224 F.3d 359, 366 (5th Cir. 2000).

Defendant's motion focuses on the final element, e.g., that of causation. Tunica County avers that the record is devoid of any evidence tending to establish that Turner's protests regarding the Board of Supervisors' unsolicited involvement in housing authority matters motivated its decision to outsource responsibility for the housing program to NDRHA. The testimony of assistant county administrator Clifton Johnson highlights longstanding concerns with the operation of the housing program, including debates extending as far back as 2002 over whether to eliminate the program altogether.

In the face of such evidence, Turner must adduce facts from which a reasonable juror could conclude that his termination resulted from his exercise of free speech. Instead, the plaintiff's deposition testimony bolsters the defendant's position:

> Q. If you believe that one of the reasons that this was done is because you made those protests, that's fine. Did anybody come to you and say, you know, that one of the reasons this is being done is because you made these protests?
>
> A. No.
>
> Q. Did anyone suggest that to you?
>
> A. No.
>
> Q. Do you have any basis, any fact, any linkage–any factual linkage, other than your subjective belief?
>
> A. No.

Exhibit E. to Motion for Summary Judgment, p. 66-67.

Turner further testified:

> Q. So this was something–your protest about what you perceived to be unlawful interference in your–in the housing authority functions, something that happened through the time that you worked there?
>
> A. Right. It was just an accumulation of events, right.
>
> Q. Okay, did Mr. Johnson ever tell you–did you ever complain to anyone other than Mr. Johnson?
>
> A. Mr. Murphree, the other supervisors, yes.
>
> Q. You complained to everybody?
>
> A. Yes.
>
> Q. Alright. Did anybody ever come to you and say you better cut it out, you're going to get fired?

A. No.

Q. Did anybody suggest to you that there was any linkage between your making these protests, whether you were right or wrong, and the transfer of the authority of responsibilities of the Housing Authority to a third party?

A. No.

Q. So, again, this is just your subjective believe there might be a linkage.

A. Yes, sir.

Exhibit E. to Motion for Summary Judgment, p. 67-68.

In view of the lack of evidence of political motivation, no reasonable factfinder could conclude that the Board of Supervisors eliminated Turner's job in response to his speech on matters of public concern. Instead, Turner's claim against the County rests only upon conclusory allegations, improbable inferences and unsupported speculation. <u>Perez v. Housing Authority of the City of Uvalde</u>, 95 Fed. Appx. 51 (5th Cir. 2004). Accordingly, Tunica County is entitled to judgment as a matter of law on the sole claim against it.

## CONCLUSION

Based on the foregoing facts and analysis, the Court finds that the defendant's Motion for Summary Judgment is well-taken and should be granted. An Order will issue accordingly.

This, the 6th day of December, 2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE